**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 24-cv-24117-ALTMAN**

CRIMPIT GROUP LTD.,

     Plaintiff,

v.

THE INDIVIDUALS, CORPORATIONS,
LIMITED LIABILITY COMPANIES,
PARTNERSHIPS, AND UNINCORPORATED
ASSOCIATIONS IDENTIFIED ON SCHEDULE
A,

     Defendants.

_____/

**PLAINTIFF'S MOTION FOR ENTRY OF FINAL DEFAULT JUDGMENT**
**AGAINST DEFENDANTS AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

Pursuant to Federal Rule of Civil Procedure 55(b), Plaintiff CRIMPIT GROUP LTD.

("CRIMPIT" or "Plaintiff"), by and through its undersigned counsel, hereby moves this Honorable

Court for an entry of final default judgment against Defendants, the Individuals, Corporations,

Limited Liability Companies, Partnerships, and Unincorporated Associations identified on the

Amended Schedule "A" hereto (collectively "Defaulting Defendants").[1]   In support thereof,

Plaintiff submits the following Memorandum of Law.

---

[1] The Schedule A to Plaintiff's [Proposed] Order on Motion for Entry of Final Default Judgment, filed concurrently with Plaintiff's Motion for Entry of Default Judgment, has been revised to remove several Defendants that were included on the Schedule A to Plaintiff's Motion for Clerk's Entry of Default [ECF No. 39] for whom Plaintiff initially intended to seek default against but no longer intends to.   Accordingly, Plaintiff is not seeking default against Defendants FUELEGO(90% Off Deals) (DOE 21), canalong1 (DOE 23), exclujgad03 (DOE 24), faintelogy (DOE 25), layerpan56 (DOE 26), liguohu16 (DOE 27), soleay88 (DOE 29), sportslife_love (DOE 30), tonsee_store (DOE 31), zhel_89 (DOE 34), OF USE (DOE 35), AESKEALLY (DOE 39), AFTRYG (DOE 40), Baikk (DOE 43), BAOshuiza (DOE 45), Coalada (DOE 58), Cozy Interiors

MEMORANDUM OF LAW

## I.    INTRODUCTION

Plaintiff filed its Complaint ("Complaint") against Defendants for trademark infringement and counterfeiting, and design patent infringement [ECF No. 1].  Defaulting defendants are in default, and the prerequisites for a default judgment have been met.  Plaintiff therefore seeks default judgment finding Defendants liable on all counts of its Complaint.  As part of the judgement, Plaintiff requests entry of a permanent injunction and an award of statutory damages for Defaulting Defendants' willful infringement pursuant to 15 U.S.C. § 1117(c), 35 U.S.C. § 271, 35 U.S. Code § 289, and 35 U.S.C. § 284.  Plaintiff also requests the Court order the listings and associated images infringing Plaintiff's trademarks and design patents, currently being used by Defaulting Defendants, be permanently removed to ensure the associated e-commerce marketplace stores may no longer be used as a means for selling products bearing counterfeits of Plaintiff's trademarks and design patents that infringe upon Plaintiff's intellectual property rights.

## II.    STATEMENT OF FACTS

### A.    Plaintiff's Rights

Plaintiff is the owner of the federally registered trademarks and design patents identified

---

(DOE 59), Criativi (DOE 60), CYMMPU Deals (DOE 61), Excellenat home (DOE 67), FZUPENG (DOE 68), Gift Ideas by Gumesh (DOE 71), HDGTSA (DOE 76), HongHeng (DOE 79), hssFGG (DOE 82), IEOWRUPQWEOR (DOE 85), iuryce (DOE 86), JENIKRCloth (DOE 87), jiajilimaoyi (DOE 89), Jianpan Network Technology Co., Ltd. (DOE 90), KBTPMTL Co.Ltd (DOE 94), KIHENGH (DOE 96), KIman (DOE 97), KLONRS (DOE 98), KTFETY (DOE 99), laiersty (DOE 100), LFW Asija (DOE 102), Liukekj (DOE 104), Moocorvic (DOE 116), Ouqilin (DOE 120), PWPSG (DOE 126), ruchs (DOE 130), Shiyuu (DOE 132), sztgfjh (DOE 137), terenwidj (DOE 138), Thenews (DOE 139), UEHUXhe (DOE 141), uycd (DOE 143), wanfds (DOE 146), Weiyuan (DOE 147), Wekvgz (DOE 148), WMTBSRSW Co.Ltd (DOE 149), wz-ei Co.Ltd (DOE 152), xaweyi (DOE 153), Xinxinke (DOE 155), XIOANGSNDBB (DOE 156), xipinshu (DOE 157), Ynagje (DOE 165), Yoland (DOE 166), Zhchnlm (DOE 171).

2

in paragraph 5 and Exhibits 1 and 2 of the Declaration of Michael Harper in Support of Plaintiff's *Ex Parte* Application for Entry of Temporary Restraining Order, Including a Temporary Injunction, a Temporary Asset Restraint, and Expedited Discovery ("Harper Decl.") [ECF No. 13] (the "CRIMPIT Trademarks and Patents"). *See also* U.S. Registrations for the CRIMPIT Trademarks and Patents attached as Exhibits 1 & 2 to the Complaint (Dkt. 1). The CRIMPIT Trademarks and Patents are used in connection with the design, marketing, and distribution of genuine high-quality CRIMPIT branded goods. Harper Decl., ¶ 7. The CRIMPIT Trademarks and Patents are symbols of Plaintiff's quality, reputation, and goodwill and have never been abandoned. *Id.*, ¶ 6. Moreover, Plaintiff has expended substantial time, money, and other resources developing, advertising, and otherwise promoting its CRIMPIT Trademarks and Patents. *Id.*, ¶ 7.

Furthermore, Plaintiff has extensively used, advertised, and promoted the CRIMPIT Trademarks and Patents in the United States, and has carefully monitored and policed the use of the CRIMPIT Trademarks and Patents. *Id.*, ¶ 8. As a result of Plaintiff's efforts, the CRIMPIT Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being sourced from CRIMPIT. *Id.*, ¶ 7.

### B.     Defendants' Infringing Acts

As alleged by Plaintiff, admitted by default, and established by the evidence submitted herewith, Defaulting Defendants operate and control e-commerce stores via third-party marketplace websites under their seller identification names and/or commercial Internet websites operating under their domain names as identified on Schedule "A" hereto (the "Seller IDs"). As such, Defaulting Defendants are the active, conscious, and dominant forces behind the promotion, advertisement, distribution, offering for sale, and sale of goods bearing counterfeit and infringing

trademarks and works infringing the CRIMPIT Trademarks and Patents (the "Counterfeit Products"). *See* Compl., ¶¶ 34–54; Harper Decl., ¶¶ 9–17; *see also* relevant webpage captures from Defendants' Internet based e-commerce stores and commercial websites operating under the Seller IDs displaying the CRIMPIT branded items offered for sale ("Defendants' Seller IDs") attached as Exhibit 1 to the Declaration of Leigh Salomon in Support of Plaintiffs' Motion for Entry of Final Default Judgment ("Salomon Decl.").

Further, as admitted by Defaulting Defendants through default, and at all times relevant, Defaulting Defendants have had full knowledge of Plaintiff's ownership of the CRIMPIT Trademarks and Patents, including its exclusive right to use and license such intellectual property and the goodwill associated therewith. Compl., ¶¶ 38, 50. Defaulting Defendants do not have, nor have they ever had, the right or authority to use the CRIMPIT Trademarks and Patents for any purpose. *See* Harper Decl., ¶ 17. However, despite their known lack of authority to do so, Defaulting Defendants have engaged in the activity of promoting, and otherwise advertising, selling, offering for sale, and distributing their Counterfeit Products via the Seller IDs. *See* Compl., ¶¶ 34–37, 50–52; *see also* Harper Decl., ¶¶ 11–14.

Plaintiff's evidence demonstrates Defaulting Defendants are engaged in the fraudulent promotion, advertisement, distribution, offering for sale, and sale of goods infringing the CRIMPIT Trademarks and Patents. Plaintiff investigated the promotion and sale of counterfeit and infringing versions of CRIMPIT branded products by Defendants through the Seller IDs. Harper Decl., ¶¶ 10–14. Plaintiff's investigation accessed Defaulting Defendants' Internet based e-commerce stores operating under each of the Seller IDs, placed orders for the purchase of various products infringing the CRIMPIT Trademarks and Patents at issue in this action from each Defaulting Defendant, and requested each product to be shipped to an address in this District. *Id.*,

¶¶ 13–15.  At the conclusion of the process, the detailed webpage captures and images of the Counterfeit Products, wherein orders were initiated via Defendants' Seller IDs, were sent to Plaintiff's representative for review.  *Id.*

Plaintiff's representative reviewed and inspected the Counterfeit Products ordered from each of the Seller IDs and, by reviewing the e-commerce stores and websites operating under each of the Seller IDs, or the detailed webpage captures and images of the items infringing the CRIMPIT Trademarks and Patents, determined the products were not genuine versions of Plaintiff's products.  *Id.*, ¶ 13–15.

### C.   Procedural Background

On October 24, 2024, Plaintiff filed its Complaint [ECF No. 1] against Defaulting Defendants.  On November 5, 2024, Plaintiff filed its *Ex Parte* Motion For Temporary Restraining Order, Including a Temporary Injunction, a Temporary Asset Restraint, and ("Application for Temporary Restraining Order") [ECF No. 13].  On November 12, 2024, the Court granted Plaintiff's Application for Temporary Restraining Order and entered the TRO [ECF No. 17].  On November 18, 2024, the Court issued a paperless Order granting Plaintiff's Motion to Extend its Temporary Restraining Order [ECF No. 22].  On December 2, 2024, the Court issued a paperless Order granting Plaintiff's second Motion to Extend its Temporary Restraining Order [ECF No. 26].  On December 26, 2024, the Court issued an Order converting the Temporary Restraining Order into a Preliminary Injunction [ECF No. 32].   The Temporary Restraining Order and Preliminary Injunction required, *inter alia*, any third party financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms who are providing services for any of the Defendants, including but not limited to,  Alibaba Group d/b/a Alibaba.com and Aliexpress.com ("Alibaba"), AllPay Limited ("AllPay"), Amazon Payment

Systems, Inc. and Amazon.com, Inc. ("Amazon"), Coinbase Global, Inc. ("Coinbase"), Contextlogic, Inc. ("Wish"), eBay, Inc. ("eBay"), Lakala, LianLian Global t/as LL Pay U.S., LLC ("LianLian"), OFX Group ("OFX"), Paxful, Inc. ("Paxful"), PayEco, Payoneer, Inc. ("Payoneer"), PayPal, Inc. ("PayPal"), Ping Pong Global Solutions, Inc. ("Ping Pong"), SellersFunding, Shein.com ("Shein"), Shopify, Stripe, Inc. ("Stripe"), Temu.com ("Temu"), Union Mobile Financial Technology Co., Ltd ("Union Mobile"), Walmart.com ("Walmart"), World First UK Ltd. ("World First"), and their related companies and affiliates (collectively, the "Third Party Providers"), to identify and restrain all funds in Defendants' associated payment accounts, including all other financial accounts tied to, used by, or that transmit funds into, the respective Defendants' financial accounts, and divert those funds to a holding account for the trust of the Court. Salomon Decl., ¶ 2. Subsequently, Plaintiff's counsel received notice from the applicable financial institutions that they complied with the requirements of the Court's Order. *Id.*

The Court's Order Granting Plaintiff's *Ex Parte* Motion for Order Authorizing Alternate Service of Process [ECF No. 11] also authorized Plaintiff to serve the Summonses, Complaint, and all subsequent filings in this matter upon foreign Defendants via e-mail and posting copies of the same on Plaintiff's designated service notice website. Pursuant to the Court's Order, Plaintiff served foreign Defendants by e-mail, and via http://crimpitgroupltd-cases.com/case-24-cv-24117.html. *See* Salomon Decl., ¶ 3; *see also* Plaintiff's Certificate of Service [ECF No. 27]. The time allowed for Defaulting Defendants to respond to the Complaint has expired. *Id.*, ¶ 4. Defaulting Defendants have not been granted any extension of time to respond, nor have they served or filed an Answer or other response. *Id.*, ¶ 5. To Plaintiff's knowledge, none of the Defaulting Defendants are infants or incompetent persons, and, upon information and belief, the Servicemembers Civil Relief Act does not apply. *Id.*, ¶ 6. On January 10, 2024, Plaintiff filed its

Request for Clerk's Entry of Default against Defaulting Defendants [ECF No. 39].  A Clerk's Default [ECF No. 40] was entered against Defaulting Defendants on January 13, 2024, as Defaulting Defendants failed to appear, answer, or otherwise plead to the Complaint, despite having been served.

Plaintiff now moves the Court to grant Final Default Judgment against Defaulting Defendants.

## III.   ARGUMENT

### A.   Default Judgment Should be Entered Against Defendants.

This Court has original subject matter jurisdiction over the trademark infringement claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051 et seq., 28 U.S.C. § 1338(a)–(b), and 28 U.S.C. § 1331.  This Court has original subject matter jurisdiction over the patent infringement claims arising under the patent laws of the United States pursuant to 35 U.S.C. § 1 et seq., 28 U.S.C. § 1338(a), and 28 U.S.C. § 1331.  Personal jurisdiction exists over Defendants in this Judicial District pursuant to Florida Statutes §§ 48.193(1)(a)(1)–(2) and FRCP § 48.193(1)(a)(6), or, in the alternative, Fed. R. Civ. P. 4(k) because, upon information and belief, Defendants regularly conduct, transact, and/or solicit business in Florida and in this Judicial District, and/or derive substantial revenue from business transactions in Florida and in this Judicial District, and/or otherwise avail themselves of the privileges and protections of the laws of the State of Florida such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and substantial justice, and/or Defendants' illegal counterfeiting and infringing actions caused injury to Plaintiff in Florida and in this Judicial District such that Defendants should reasonably expect such actions to have consequences in Florida and this judicial District.  *See* Compl., ¶¶ 11–13.

1.      **Default Judgment is Proper.**

A court may order a default judgment pursuant to Fed. R. Civ. P. 55(b)(2) following the entry of default by the court clerk under Rule 55(a).  *See* Fed. R. Civ. P. 55.  Upon entry of default by the clerk, the well-pled factual allegations of a plaintiff's complaint, other than those related to damages, will be taken as true.  *PetMed Express, Inc. v. Medpets.com*, 336 F.Supp.2d 1213, 1217 (S.D. Fla. 2004) (citing *Buchanan v. Bowman*, 820 F.2d 359 (11th Cir. 1987)).  In this case, the Complaint, pleadings, and Declaration filed in support of Plaintiff's Motion for Entry of Final Default Judgment clearly demonstrate that default judgment pursuant to Rule 55 of the Federal Rules of Civil Procedure should be entered against Defaulting Defendants.

Where there are multiple defendants, "plaintiff must state in a motion for default judgement that there are no allegations of joint and several liability and set forth the basis why there is no possibility of inconsistent liability."  *Adidas AG v. Adidasjeremycottitalia.eu*, No. 13-cv-62712, 2014 WL 1122017, at *2 (S.D. Fla. Aug. 14, 2014) (entering default judgement against all defendants even where plaintiff alleged joint and several liability, because all defendants defaulted).

Here, Plaintiff makes no allegations of joint and several liability against the Defaulting Defendants, who are the only Defendants remaining in this case.  The Complaint alleges, and the evidence establishes, that each Defaulting Defendant sold or offered to sell Counterfeit Products.  As explained more fully below, Plaintiff seeks statutory damages against each Defaulting Defendant for each Defaulting Defendants' willful infringement.  As a result, there is no risk of inconsistent liability.

2.      **Factual Allegations Establish Defendants' Liability.**

i.      **Defendants Are Liable for Trademark Infringement.**

Title 15 U.S.C. § 1114 provides liability for trademark infringement if, without the consent of the registrant, a defendant uses "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark: which is likely to cause confusion, or to cause mistake, or to deceive." In order to prevail on its trademark infringement claim under Section 32 of the Lanham Act, Plaintiff must demonstrate "(1) that it had prior rights to the mark at issue and (2) that the defendant had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two." *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 (11th Cir. 2001) (citing *Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 106 F.3d 355, 360 (11th Cir. 1997)).

Thus, the factual allegations in Plaintiff's Complaint properly allege the elements for the above claims. Moreover, the factual allegations in Plaintiff's Complaint, substantiated by the evidence submitted herewith, conclusively establish Defendants' liability under each of the claims asserted in the Complaint. Accordingly, Default Judgment pursuant to Rule 55 of the Federal Rules of Civil Procedure should be entered against Defaulting Defendants.

### ii.    Defendants Are Liable for Design Patent Infringement.

The Patent Act provides:

> Whoever during the term of a patent for a design, without license of the owner, (1) applies the patented design, or any colorable imitation thereof, to any article of manufacture for the purpose of sale, or (2) sells or exposes for sale any article of manufacture to which such design or colorable imitation has been applied shall be liable to the owner to the extent of his total profit, but not less than $250, recoverable in any United States district court having jurisdiction of the parties.

35 U.S.C. § 289. To prevail on its patent infringement claim, Plaintiff must demonstrate that the accused product infringes a patented design. Design patent infringement requires a showing that the accused design is substantially the same as the claimed design. The criterion is deception of

the ordinary observer, such that one design would be confused with the other.  *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F. 3d 665, 679 (Fed. Cir. 2008).  Under this test, the central inquiry is whether an "ordinary observer," who is familiar with the prior art, would find the overall appearance of the accused product to be "substantially the same" as the overall appearance of the patented design.  *Id.* at 677; *see also Amini Innovation Corp. v. Anthony Cal., Inc.*, 439 F .3d 1365, 1372 (Fed. Cir. 2006); *Pride Fam. Brands, Inc. v. Carl's Patio, Inc.*, 992 F. Supp. 2d 1214, 1224 (S.D. Fla. 2014) (citing *Gorham Mfg. Co. v. White*, 81 U.S. 511, 528 (1871) ("If to the ordinary observer the resemblance between the two designs is such as to deceive the observer, inducing him to purchase one supposing it to be the other, then the first one patented is infringed by the other."). An infringing product need not be an exact copy of the patented design, and Defendants cannot escape infringement by introducing minor variations into an otherwise copycat product.  *Egyptian Goddess*, 543 F. 3d at 670.

Design patents are typically claimed as shown in drawings, and claim construction must be adapted to a pictorial setting.  *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1303 (Fed. Cir. 2010); *see also Contessa Food Prods., Inc. v. Conagra, Inc.*, 282 F. 3d 1370, 1377 (Fed. Cir. 2002).  Here, no detailed verbal description of the figures in the Design Patents is necessary because each "illustration in the drawing views is its own best description."  *Crocs, Inc.* at 1303. Accordingly, the claim of Plaintiff's Design Patents should be construed only as an ornamental design for a crimping tool as shown in the Design Patents.  *See* Complaint at Exhibit 2 [ECF No. 1-2].  Plaintiff asserts a simple comparison of Defaulting Defendants' Counterfeit Products, which are being offered for sale and/or sold in the United States, with Plaintiff's Design Patents and any "ordinary observer" can perceive Defaulting Defendants' blatant infringement of Plaintiff's exclusive patents as the images that depict the design are virtually exact duplicates or substantially

similar images to Plaintiff's Design Patents.  *See* Exhibit 1 to Salomon Decl.  In accordance with the Patent Act, the screenshot images demonstrate Defaulting Defendants' ongoing unauthorized promotion, offer for sale, and/or sale of goods embodying Plaintiff's Design Patents in direct violation of Plaintiff's federal rights to exclude others from making, using, offering for sale, or selling the Design Patents.  35 U.S.C. §§ 271 & 261; *see also Tiffany (NJ), LLC v. Dongping*, No. 10-cv-61214, 2010 WL 4450451, (S.D. Fla. Oct. 29, 2010) (finding unopposed declarations supporting intellectual property ownership and exact duplicates of asserted designs were sufficient to establish liability for infringement).

Plaintiff is the inventor and owner of the Design Patents.  Defaulting Defendants have without authorization used and offered for sale Plaintiff's Design Patents.  The well-pled factual allegations of Plaintiff's Complaint, including the specific allegations identified in the previous paragraphs, properly allege the elements for design patent infringement.  Moreover, the factual allegations in Plaintiff's Complaint, substantiated by the evidence submitted, conclusively establish Defaulting Defendants' liability for design patent infringement asserted in the Complaint.  Accordingly, Default Final Judgment pursuant to Rule 55 of the Federal Rules of Civil Procedure should be entered against the Defaulting Defendants.

**B.    Plaintiff's Requested Relief Should be Granted.**

**1.    Entry of a Permanent Injunction is Appropriate.**

Pursuant to the Lanham Act, a district court is authorized to issue an injunction "according to the principles of equity and upon such terms as the court may deem reasonable," to prevent violations of trademark law.  15 U.S.C. § 1116(a).  Under the Patent Act, a district court "may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable."  35 U.S.C. § 283.  Indeed,

"[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Burger King Corp. v. Agad*, 911 F. Supp. 1499, 1509–10 (S.D. Fla. 1995) (citing *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988)). Moreover, even in a default judgment setting, injunctive relief is available. *See e.g., PetMed Express, Inc.*, 336 F. Supp. 2d at 1222–23. Defaulting Defendants' failure to respond or otherwise appear in this action makes it difficult for Plaintiff to prevent further infringement absent an injunction. *Atmos Nation, LLC v. Pana Depot, Inc.*, No. 14-CIV-62620, 2015 WL 11198010, at *2 (S.D. Fla. Apr. 8, 2015); *see also Jackson v. Sturkie*, 255 F. Supp. 2d. 1096, 1103 (N.D. Cal. 2003) ("[D]efendant's lack of participation in this litigation has given the court no assurance that defendant's infringing activity will cease. Therefore, plaintiff is entitled to permanent injunctive relief."). Pursuant to 15 U.S.C. § 1116 and 35 U.S.C. § 283, this Court should permanently enjoin Defaulting Defendants from continuing to infringe any of Plaintiff's intellectual property rights, including the CRIMPIT Trademarks and Patents.

Permanent injunctive relief is appropriate where a plaintiff demonstrates 1) it has suffered irreparable injury; 2) there is no adequate remedy at law; 3) the balance of hardship favors an equitable remedy; and 4) an issuance of an injunction is in the public's interest. *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 392–93, 126 S. Ct. 1837, 164 L. Ed. 2d 641 (2006). As demonstrated herein and based upon the issuance of the Temporary Restraining Order and Preliminary Injunction entered in this matter, Plaintiff has carried its burden on each of the four factors, warranting permanent injunctive relief, as Defaulting Defendants have unlawfully used Plaintiff's goodwill to make a profit. Accordingly, permanent injunctive relief is appropriate.

Defaulting Defendants' actions merit permanent injunctive relief, not only to protect

Plaintiff's reputation, but also to protect consumers from being deceived as to the quality and source of products bearing Plaintiff's trademarks and patents.  The facts alleged in Plaintiff's Complaint, substantiated by the evidence submitted herewith, show Defendants are continuously infringing and inducing others to infringe the CRIMPIT Trademarks and Patents by using them to advertise, promote, and sell goods bearing marks which are identical or altered to be identical to the CRIMPIT Trademarks and Patents.  *See* Compl., ¶¶ 50, 55–57.

Plaintiff is suffering, and will continue to suffer, irreparable injury if Defaulting Defendants' infringing activities are not permanently enjoined.   Harper Decl., ¶¶ 30–32. "[S]ufficiently strong showing of likelihood of confusion . . . may by itself constitute a showing of a substantial threat of irreparable harm." *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir.1998); *see also Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 986 (11th Cir.1995) ("There is no doubt that the continued sale of thousands of pairs of counterfeit jeans would damage LS & Co.'s business reputation and might decrease its legitimate sales.").  In any event, Plaintiff's Complaint alleges that Defendants' unlawful actions have caused Plaintiff irreparable injury, and will continue to do so if Defendants are not permanently enjoined.  Compl., ¶¶ 53, 58.)  Defendants have defaulted upon Plaintiff's factual allegations in that respect.

Additionally, Plaintiff has no adequate remedy at law so long as Defaulting Defendants continue to use Plaintiff's trademarks and patents in connection with the operation of their Internet based e-commerce stores under the Seller IDs because Plaintiff will have no control over the quality of what appear to be its products in the marketplace.  An award of money damages alone will not cure the injury to Plaintiff's reputation and goodwill which will result if Defaulting Defendants' infringing and counterfeiting actions are allowed to continue.  Moreover, it can hardly be said that Defaulting Defendants face hardship in refraining from their willful infringement of

Plaintiff's trademarks and patents, whereas Plaintiff faces hardship from loss of sales and its inability to control its reputation.  In reality, Defaulting Defendants have no cognizable hardship as they will be prohibited from selling Counterfeit Products, an illegal act to begin with.

Finally, the public has an interest in the issuance of a permanent injunction against Defaulting Defendants in order to prevent consumers from being misled by Defaulting Defendants' products.  *See Chanel, Inc. v. besumart.com*, 240 F. Supp. 3d 1283, 1291 (S.D. Fla. 2016) ("[A]n injunction to enjoin infringing behavior serves the public interest in protecting consumers from such behavior." (alteration added) (citation omitted)); *BellSouth Adver. & and Publ'g. Corp. v. Real Color Pages, Inc.*, 792 F. Supp. 775, 785 (M.D. Fla. 1991) (holding "[i]n a trademark infringement or unfair competition case, a third party, the consuming public is present and its interests are paramount.")  Ultimately, the permanent injunction will prevent consumer confusion and deception in the marketplace, and will protect Plaintiff's property interest in its trademark and patents.

Furthermore, as admitted by Defendants through default, (i) the Seller IDs and associated payment accounts are essential components of Defendants' online activities, and (ii) the Seller IDs themselves are one of the means by which Defendants further their counterfeiting scheme and cause harm to Plaintiff.  *See* Compl., ¶¶ 35–36.  Therefore, in order to effectuate the injunction, all listings and associated images of goods bearing counterfeits of the CRIMPIT Trademarks and Patents via the Seller IDs should be permanently removed by the applicable governing Internet marketplace platform operators and/or administrators.  Without removing the listings and associated images of goods bearing and/or using counterfeits of Plaintiff's works, Defendants will remain free to continue infringing Plaintiff's trademarks and patents with impunity, will continue to benefit from the Internet traffic to those e-commerce stores and websites built through the

unlawful use of the CRIMPIT Trademarks and Patents, and will continue to defraud the public by their illegal activities. The Court's powers of equity can compel measures necessary to enforce an injunction against infringement. *See, e.g., Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971) ("Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for. . . the essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case."); *United States v. Bausch & Lomb Optical Co.*, 321 U.S. 707, 724 (1944) ("Equity has power to eradicate the evils of a condemned scheme by prohibition of the use of admittedly valid parts of an invalid whole.").

Defaulting Defendants have created an Internet-based counterfeiting and infringement scheme and are profiting from the deliberate misappropriation of Plaintiff's rights. Unless the infringing listings of Plaintiff's CRIMPIT Trademarks and Patents are permanently removed, Defaulting Defendants will be free to continue to defraud the public with their illegal activities. Accordingly, the Court should eliminate the means by which Defaulting Defendants conduct their unlawful activities to further prevent the use of these instrumentalities of infringement.

## 2. Damages as to Count I for Trademark Counterfeiting and Infringement

In a case involving the use of counterfeit marks in connection with a sale, offering for sale, or distribution of goods, 15 U.S.C. § 1117(c) provides that a plaintiff may elect an award of statutory damages at any time before final judgment is rendered in the sum of not less than $1,000.00 nor more than $200,000.00 per counterfeit mark per type of good. 15 U.S.C. § 1117(c)(1). In addition, if the Court finds that Defendants' counterfeiting actions were willful, it may impose damages above the maximum limit up to $2,000,000.00 per mark per type of good. 15 U.S.C. § 1117(c)(2). Pursuant to 15 U.S.C. § 1117(c), Plaintiff elects to recover an award of

statutory damages as to Count I of the Complaint.

The Court has wide discretion to set an amount of statutory damages. *PetMed Express, Inc.*, 336 F. Supp. 2d at 1219 (citing *Cable/Home Commc'n Corp. v. Network Prod., Inc.*, 902 F.2d 829, 852 (11th Cir. 1990)). Indeed, an award of statutory damages is an appropriate remedy, despite a plaintiff's inability to provide actual damages caused by a defendant's infringement. *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 852 (E.D. Mich. 2006) ("[A] successful plaintiff in a trademark infringement case is entitled to recover enhanced statutory damages even where its actual damages are nominal or non-existent."). Congress enacted a statutory damages remedy in trademark counterfeiting cases because evidence of a defendant's profits in such cases is almost impossible to ascertain. *See, e.g.*, S. REP. NO. 104–177, pt. V(7) (1995) (discussing purposes of Lanham Act statutory damages); *see also PetMed Express, Inc.*, 336 F. Supp. 2d at 1220 (statutory damages are "especially appropriate in default judgment cases due to infringer nondisclosure"). This case is no exception.

A defendant's intent can be of probative value for establishing willfulness, triggering an enhanced statutory award. *PetMed Express, Inc.*, 336 F. Supp. 2d at 1220. A defendant is deemed to have acted willfully where "the infringer acted with actual knowledge or reckless disregard" to a plaintiff's intellectual property rights. *See Arista Records, Inc. v. Beker Enter., Inc.*, 298 F. Supp. 2d 1310, 1312 (S.D. Fla. 2003). Willfulness may also be inferred from the defendant's default. *See PetMed Express, Inc.*, 336 F. Supp. 2d at 1217 (upon default, well plead allegations taken as true). In either case, a defendant is deemed to have the requisite knowledge that its' acts constitute an infringement.

Here, the CRIMPIT Trademarks are renowned worldwide, easily identified as high quality merchandise. The fact that Defaulting Defendants offered for sale, and sold goods using marks

which are identical and/or have been altered to be identical, exemplifies their desire and purpose to trade upon Plaintiff's goodwill.  In a case of clear-cut copying such as the instant matter, it is appropriate to infer that Defaulting Defendants intended to cause confusion in the marketplace in an attempt to benefit from Plaintiff's reputation, resulting in Plaintiff's detriment.  *See PetMed Express, Inc.*, 336 F. Supp. 2d at 1220 (court infers intent to confuse consumers into believing affiliation from Defendants' use of such a mark that was confusingly similar).  Moreover, in this district, it has been held that when an alleged infringer adopts a mark "with the intent of obtaining benefit from the plaintiff's business reputation, 'this fact alone may be sufficient to justify the inference that there is confusing similarity.'" *Turner Greenberg Assocs.*, 320 F. Supp. 2d 1317, 1333 (S.D. Fla. 2004) (citing *Carnival Corp. v. Seaescape Casino Cruises, Inc.*, 74 F. Supp. 2d 1261, 1268 (S.D. Fla. 1999)).

The evidence clearly establishes that Defaulting Defendants intentionally copied the CRIMPIT Trademarks for the purpose of deriving the benefit of Plaintiff's world-famous reputation.  In addition, Defendants defaulted on Plaintiff's allegations of willfulness.  *See* Compl., ¶¶ 50–51.  *See Arista Records, Inc.*, 298 F. Supp. 2d at 1313 (finding a Court may infer willfulness from the defendants' default).  As such, this Court should award a significant amount of statutory damages under the Lanham Act to ensure Defaulting Defendants do not continue their intentional and willful counterfeiting activities.

Further, the evidence in this case demonstrates that each Defaulting Defendant promoted, distributed, advertised, offered for sale, and/or sold at least one type of good bearing marks which were in fact counterfeits of the CRIMPIT Trademarks.  *See* Compl., ¶¶ 48–51; Harper Decl., ¶¶ 13–16.  In cases involving the same merits, issues, and requests for damages, this Court has found similar evidence of record sufficient to establish a defendant's infringement and has entered a final

default judgment and permanent injunction accordingly.  *See, e.g.*, *Fendi S.R.L.. v. Individuals, P'ships, and Unincorporated Ass'ns Identified on Schedule "A"*, Case No. 20-CV-61724-RNS (S.D. Fla. Dec. 22, 2020, docketed Dec. 23, 2020).  Based on the above, Plaintiff respectfully requests the Court award statutory damages in the amount of $200,000.00 against each Defendant for which Plaintiff has alleged a trademark claim in respect of the CRIMPIT Trademarks.

Plaintiff's suggested damage amount is well within the permissible range prescribed under 15 U.S.C. § 1117(c)(2) and should be sufficient to deter Defaulting Defendants and others from continuing to counterfeit or otherwise infringe Plaintiff's trademarks, compensate Plaintiff, and punish Defaulting Defendants, all stated goals of 15 U.S.C. § 1117(c).  Joint Statement of Trademark Counterfeiting Legislation, H.R.J. Res. 648, 98th Cong., 2nd Sess., 130 Cong.Rec. H12076, H12083; *PetMed Express, Inc.*, 336 F. Supp. 2d at 1222 ("statutory damages under § 1117(c) are intended not just for compensation for losses, but also to punish and deter wrongful conduct.").  This Court, and others, have granted statutory damages under the Lanham Act similar to Plaintiff's request herein.[2]

---

[2] *See, e.g., Michael Kors, L.L.C. v. Individuals, P'ships, and Unincorporated Ass'ns Identified on Schedule "A"*, Case No. 19-cv-63119-RKA (S.D. Fla. Apr. 27, 2020) (awarding Plaintiff $1,000,000.00 against each Defendant); *Adidas AG v. Individuals, P'ships, and Unincorporated Ass'ns Identified on Schedule "A"*, Case No. 19-cv-63109-RKA (S.D. Fla. Mar. 31, 2020) (same); *Chanel, Inc. v. Individuals, P'ships, and Unincorporated Ass'ns Identified on Schedule "A"*, Case No. 19-CV-62102-RKA (S.D. Fla. Nov. 5, 2019, docketed Nov. 6, 2019) (same); *Gucci America, Inc., v. Individuals, P'ships, and Unincorporated Ass'ns Identified on Schedule "A"*, Case No. 19-cv-61447-RKA (S.D. Fla. Oct. 15, 2019, docketed Oct. 16, 2019) (same); *Tiffany (NJ) LLC, v. account n*, Case No. 19-cv-61294-RKA (S.D. Fla. Aug. 16, 2019, docketed Aug. 19, 2019) (same). *See also Chanel, Inc. v. Replicachanelbag*, 362 F. Supp. 3d 1256 (S.D. Fla. 2019) (Bloom, B.) (same); *Malletier v. Individuals, P'ship*, No. 19-cv-61021-MGC, 2019 U.S. Dist. LEXIS 225874 (S.D. Fla. Dec. 12, 2019) (same); *Fendi S.R.L. v. Joe Bag*, No. 19-cv- 61356-RAR, 2019 U.S. Dist. LEXIS 169132 (S.D. Fla. Aug. 28, 2019) (same); *Chanel, Inc. v. Fendona*, No. 19-cv-60734-BB, 2019 U.S. Dist. LEXIS 225780 (S.D. Fla. May 23, 2019) (same); *Adidas AG v. gshwjs, et al.*, Case No. 19-cv-61811-RS (S.D. Fla. Nov. 25, 2019) (same); *Apple Corps Limited v. Alvis Bronte*, Case No. 19-cv-60928-UU (S.D. Fla. June 24, 2019) (same); *YETI Coolers, LLC v. allramblerdeal.com*, Case No. 18-cv-62811-WPD (S.D. Fla. May 31, 2019) (same); *Salomon Vuitton Malletier, S.A. v.*

### 3.      Damages as to Count II for Design Patent Infringement

Plaintiff's Complaint sets forth a cause of action for design patent infringement pursuant to the Patent Act, 35 U.S.C. § 271, 35 U.S.C. § 289, and 35 U.S.C. § 284.  As a remedy for design patent infringement, the Patent Act imposes liability on infringers of design patents "to the extent of his total profit, but not less than $250."  A table identifying the specific patent(s) infringed, and the calculated damages for each Defaulting Defendant is attached as Exhibit 2 to the Salomon Declaration.

*Statutory Damages.*  As an additional remedy for design patent infringement, the Patent Act imposes liability on infringers of design patents "to the extent of his total profit, but not less than $250."  35 U.S.C. § 289.  To the extent that the Defaulting Defendants' known total profits were less than $250 in connection with the sale of products that infringe on the Design Patents, Plaintiff seeks $250 for the infringement of each Design Patent.

*Lost Profits.*  Under 35 U.S.C. § 284, design patent or utility patent infringers may be liable for lost profits or a reasonable royalty.  To the extent that the Defaulting Defendants' total profits exceeded $250, Plaintiff seeks lost profits.[3]

The Patent Act provides that "[u]pon finding for the claimant, the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer."  35 U.S.C. § 284.  These damages may be increased "up to three times the amount found or assessed."  *Id.*  In determining damages for patent infringement, "the focus is on compensating the patentee or the plaintiff for this injury."  *IMX, Inc. v. E-Loan, Inc.*, 748 F. Supp. 2d 1354, 1361 (S.D. Fla. 2010).  "[T]he

---

*Beltteen*, Case No. 18-cv-62871-JIC (S.D. Fla. Mar. 22, 2019) (same).

[3] Plaintiff seeks lost profits in connection with seventy-six (76) Defaulting Defendants.

general rule for determining actual damages to a patentee that is itself producing the patented item is to determine the sales and profits lost to the patentee because of the infringement." *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995).  Pursuant to 35 U.S.C. § 284, Plaintiff seeks to recover an award of lost profits.

 Determining an award under Section 289 involves two steps: "First, identify the 'article of manufacture' to which the infringed design has been applied.  Second, calculate the infringer's total profit made on that article of manufacture." *Samsung Elecs. Co. v. Apple, Inc.*, 137 S. Ct. 429, 434 (2016).  The plaintiff has the initial burden to show the article of manufacture and the defendant's total profit on that article. *Evriholder Prods. LLC v. Simply LBS Ltd. Co.*, No. 17-cv-4329, 2020 WL 7060336, at *9 (S.D.N.Y. Apr. 21, 2020) ("[A]fter a plaintiff in a patent action submits admissible evidence of an infringer's gross profit … it is the infringer's burden to submit admissible evidence to establish that other expenses and costs should be deducted from that profit.") (citing *Nordock, Inc.v . Sys., Inc.*, No. 11-cv-118, 2017 WL 5633114, at *3 (E.D. Wisc. Nov. 21, 2017) (collecting cases)).  The defendant then has the burden to produce evidence as to any deductions from the total profit identified by the plaintiff (or to show the article of manufacture, if it believes it to be different). *Evriholder*, 2020 WL 706036, at 9.

When calculating an infringer's profits, courts have held in similar contexts that any uncertainty is to be resolved against the infringer. *See, e.g.*, *Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.*, 316 US. 203, 206-07 (1942) ("The burden is the infringer's to prove that his infringement had no cash value in sales made by him.  If he does not do so, the profits made on sales of goods bearing the infringing mark properly belong to the owner").  For example, "[t]he Second Circuit instructs that in determining infringement damages, courts are to resolve against the defendant any factual uncertainties, such as whether any portion of the defendants' revenue

may be deducted from damages, when the defendants left the uncertainty by not responding to the evidence of counterfeit sales with evidence of their own," as is the case here. *Sara Lee Corp. v. Bags of New York, Inc.*, 36 F. Supp. 2d 161, 169 (S.D.N.Y. 1999) (citing *Lous Vouitton S.A. v. Spencer Handbags Corp.*, 765 F.2d 966 (2d Cir. 1985) (holding that where defendants failed to meet their burden regarding profit calculation, the court could adopt the plaintiff's proposed calculation); *see also Chloe v. Zarafshan*, No. 06-cv-3140, 2009 WL 2956827, at *5 (S.D.N.Y. Sept. 15, 2009) (awarding infringer's entire revenue and noting that "the court may resolve any doubts against the defendant in calculating profits, particularly if the uncertainty is due to the defendant's inadequate record keeping or failure to produce documentary evidence") (quoting *Aris Isotoner, Inc. v. Dong Jin Trading Co., Inc.*, No. 87-cv-890, 1989 WL 236526, at *5 (S.D.N.Y. Sept. 22, 1989) (collecting cases)).

In cases where defendants have failed to produce documents to characterize revenue, courts have entered a profits award for the entire revenue amount. *See, e.g.*, *Chloe*, 2009 WL 2956827 at *5 (entering profits award for the entire revenue amount in even though "records offer no guidance as to how much of this revenue stream related to [Plaintiff's] products (as opposed to other products not at issue in this case) or as to the costs incurred in acquiring and selling these products."); *New York Racing Ass'n, Inc. v. Stroup News Agency Corp.*, 920 F. Supp. 295, 301 (N.D.N.Y. 1996) (calculating lost profits based on gross figures where the defendant offered no evidence of cost of goods sold) (citing *Am. Honda Motor Co. v. Two Wheel Corp.*, 918 F.2d 1060, 1063 (2d Cir. 1990) ("Ordinarily, a plaintiff that has proved the amount of infringing sales would be entitled to that amount unless the defendant adequately proved the amount of costs to be deducted from it.")); *WMS Gaming, Inc. v. WPC Prods. Ltd.*, 542 F.3d 601, 608 (7th Cir. 2008) (placing burden on the defendant to show that certain portions of its revenues were not obtained

through infringement of the plaintiff's marks).  Indeed, under normal circumstances, it is the infringer who bears the burden of "offering a fair and acceptable formula for allocating a given portion of overhead to the particular infringing items in issue." *Sunbeam Prods., Inc. v. Wing Shing Prods. (BVI) Ltd.*, 311 B.R. 378, 401 (S.D.N.Y. 2004), *aff'd*, 153 F. App'x 703 (Fed. Cir. 2005) (citation omitted).  "But if the infringer has failed to produce any evidence … the Court must determine the costs to be subtracted from revenue based on the evidence it has to determined profits."  *See Nike, Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437, 1447 (Fed. Cir. 1998).

Here, the Design Patents claim ornamental designs for a crimping tool.  In the case of a design for a single-component product, such as the Design Patents, the "product is the article of manufacture to which the design has been applied." *Samsung Elecs. Co. v. Apple, Inc.*, 137 S. Ct. at 367.  Accordingly, the relevant article of manufacture is each of the Counterfeit Products sold by Defaulting Defendants.

Since Defaulting Defendants have chosen not to participate in these proceedings, Plaintiff has limited available information, received from the Third Party Providers, regarding Defaulting Defendants' profits from the sale of Counterfeit Products.  Defaulting Defendants have failed to appear in this matter and have not produced any documents or information: (1) characterizing each of the transactions in their financial accounts, (2) other accepted payment methods; or (3) other Internet stores that they may be operating.  As a result, Defaulting Defendants have not met their burden to apportion gross receipts between infringing and not-infringing product sales, or to show any deductions.

Since the Defaulting Defendants have not met their burden of apportioning gross sales or showing any deductions, the Court should award the greater of the amount restrained or $250.00

for each Defaulting Defendant.[4]  *See Evriholder* 2020 WL 706036, at *9; 35 U.S.C. § 289.  The limited information provided by the Payment Processors for Defaulting Defendants indicates that Plaintiff's lost profits ranges from $257.36 to $27,328.04.  Salomon Decl., ¶ 2.  A breakdown, by Defaulting Defendant, of the Defendant's gross profits and Plaintiff's requested profit award is provided in the chart in Exhibit 2 to the Salomon Decl.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests the Court enter final default judgment and a permanent injunction against Defendants in the form of the proposed Final Default Judgment and Permanent Injunction filed herewith.

Dated:  January 31, 2025                              Respectfully submitted,

**BOIES SCHILLER FLEXNER LLP**

*/s/ Leigh Salomon*
Leigh Salomon (FL Bar No. 1054106)
100 SE 2nd Street, Suite 2800
Miami, FL 33131
Tel: (305) 357-8450
Email: lsalomon@bsfllp.com

***Counsel for Plaintiff CRIMPIT GROUP LTD.***

---

[4] Each Defaulting Defendant infringed on at least one Design Patent, entitling Plaintiff to a minimum of $250 for each such infringement.  If the Third Party Provider provided information about gross profits for a specific infringing product (i.e., the "Gross Merchant Value"), Plaintiff relied on that information.  If the Third Party Provider did not provide such information, Plaintiff relied on the reported entire revenue amount for the Defaulting Defendant.  *See, e.g.*, *Chloe*, 2009 WL 2956827 at *5 (entering profits award for the entire revenue amount even though "records offer no guidance as to how much of this revenue stream related to [Plaintiff's] products (as opposed to other products not at issue in this case) or as to the costs incurred in acquiring and selling these products.").

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 31ˢᵗ day of January, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that Boies Schiller Flexner LLP served the foregoing document to Defendants via email to known email addresses and by posting the foregoing document on Plaintiff's Notice Website, consistent with this Court's order authorizing alternative service [ECF No. 11].

*/s/ Leigh Salomon*
Leigh Salomon (FL Bar No. 1054106)

| DOE No. | Defendant Seller | Seller Email |
|---------|------------------|--------------|
| 1 | 01 GARDEN Store | yyhhdg2512@outlook.com |
| 2 | 1688 3C Electronics Direct Store | jiaocmy@yeah.net |
| 3 | 3C-top-world Store | manmaosty@yeah.net |
| 4 | CD_Tool Store | qizhoun@outlook.com |
| 5 | everso Official Store | huihuijinjin93@163.com |
| 6 | Friday's delusion Store | nxibo2103001@outlook.com |
| 7 | In Good Store | shensslinc743@163.com |
| 8 | Jazz Barbecue Supplies Store Store | yyd826ae@163.com |
| 9 | Keep-Real World Store | lwsffgg@126.com |
| 10 | Korea Trendy Apparel Store | renglonde6@163.com |
| 11 | MY-00001 Good Quality Shop Store | wuzhoun@outlook.com |
| 12 | Pro Houseware Store | smmyi007@163.com |
| 13 | Shop1102860963 Store | stylibility@outlook.com |
| 14 | WINOMO Homedecoration Store | majorsured@outlook.com |
| 15 | Shop1103539014 Store | cyt868ae@163.com |
| 16 | Shop1103860787 Store | beolenma@163.com |
| 17 | Smart Consumer Electronics Store | etryhc@yeah.net |
| 18 | The Boutique X Store | hdghshngh@163.com |
| 19 | Treasures Store Store | ldfsdgdh@yeah.net |
| 20 | YiGetRich0 Store | ning_nn@126.com |

| 22 | homepro18 | sparkjy38@gmail.com |
|----|-----------|---------------------|
| 28 | sharouet | swugake@163.com |
| 32 | topratedselling1 | topratedselling00@163.com |
| 33 | wererater | wereratery@outlook.com |
| 36 | 7YH7DL | froiggkhckfgd@tom.com |
| 37 | AaSFJEG | zjssgrhe@163.com |
| 38 | Abrahamli | leihaoyiyi@163.com |
| 41 | AJIUHE | shenqingshuixiu121@163.com |
| 42 | Asibei Co.ltd | kwairgne@126.com |
| 44 | BangShiLi | xnbcmzjkhuir@163.com |
| 46 | BBZUI | songherenyu@163.com |
| 47 | Be BEAuty | wjlkiopqa@126.com |
| 48 | bentleyna | xiahkehgmeie@163.com |
| 49 | BFYSFBAIG | wsphbm56@163.com |
| 50 | Biyunhua | skeiewskf@tom.com |
| 51 | Bngzhgl | qqll66hhjjn@yeah.net |
| 52 | Boyong | o699plhm@yeah.net |
| 53 | bppmkin | yupojade@163.com |
| 54 | Chailin | lisekrg@sohu.com |
| 55 | CHCuiong | chcgbjkl@163.com |
| 56 | Chenqiufeng | ccsagsw@163.com |
| 57 | CHXonu | chxuno@163.com |

| 62 | DaoAg | sdirgyr@126.com |
|----|-------|-----------------|
| 63 | dferkgs | rotidkfksd@163.com |
| 64 | DSXenun | dsxiseo@163.com |
| 65 | DYWADE | zyfdshd@163.com |
| 66 | EKKIMIMI | rhcxsyhrc@163.com |
| 69 | GEEEWN | ggjsig@163.com |
| 70 | GHOJET | help@stylethatbaby.com |
| 72 | Glenner | jiasfdngeh@163.com |
| 73 | guangzhouruixinyikejiyouxiangongsi | yswvbi@126.com |
| 74 | guangzhouyunxiangyifushiyouxiangongsi | fwefsddwq@163.com |
| 75 | GuLuBin-SmartMart | lgbagd@126.com |
| 77 | Hjuang | sgfsgd123@163.com |
| 78 | hongcongsuye | l9a1rm5txr6g@outlook.com |
| 80 | houepaixun19675111 | houepaixun1967511l@163.com |
| 81 | hrtcs | hyycwqsh@126.com |
| 83 | HWTuang | hwticc@126.com |
| 84 | HZWZB | jiehaozhi@126.com |
| 88 | JGBGVvjh | ioshygb@126.com |
| 91 | JOKI | bolkhslmjki@163.com |
| 92 | jungdeepe | allsecti@163.com |
| 93 | JYGcdtg | iju7gthy@126.com |

| 95 | KF Store | kfrn586gh@126.com |
| 101 | Leiity | ieaoem@163.com |
| 103 | liHEUXA | letgoingse@163.com |
| 105 | Liushuuu | jujydcsx@126.com |
| 106 | LJiuie | vghyhb@163.com |
| 107 | LOJKER | mahongxiang193@163.com |
| 108 | Lushas | oiemgkaer@163.com |
| 109 | maichufen | mkajgh@163.com |
| 110 | MELDVDIB | zpzgjsy@163.com |
| 111 | miehs | oeubcs@126.com |
| 112 | Mieusa | beuyee@126.com |
| 113 | mIYEX | kiyeyxs@126.com |
| 114 | MLFoif | mlfgbj@126.com |
| 115 | MOGjc | oyfvgtc@yeah.net |
| 117 | MQjiaju | mq852963ll@163.com |
| 118 | MUYAN | lwzfgd564893@163.com |
| 119 | ouldexa | failedm@163.com |
| 121 | pabo | pabo58bnsg@163.com |
| 122 | PANDATEXB | phloroglucinbu251@outlook.com |
| 123 | PANRICH | longwangrich@126.com |

| 124 | PTJKU | zoumeidisss3@163.com |
|-----|-------|----------------------|
| 125 | PUISBXS | victimdress@163.com |
| 128 | QINGTE | mingzhiteng@163.com |
| 129 | QYXinue | cjgyuy@126.com |
| 131 | SHENZHENSHIJIANGJING WANJUYOU XIANGONGSI | wenhuajiangjin@163.com |
| 133 | SIfdSeng | szsssspyxgs@163.com |
| 134 | SJWsp | lijiawhb@126.com |
| 135 | SKDZ | sshda885@tom.com |
| 136 | sumensumen | gohrfotk01g4hf@163.com |
| 140 | TKYWggg | roptkzaskgdsks@tom.com |
| 142 | Uhansl | pljsxx2666@126.com |
| 144 | Vueong | pengguouing@outlook.com |
| 145 | WalGRHFR | wxldegs@126.com |
| 150 | WULANLA | gwwwwyou@126.com |
| 151 | WUYUH | huniansm@126.com |
| 154 | xiaxiaotingshangmao | ranguan86517@126.com |
| 158 | XJJinin | xjjzop@126.com |
| 159 | Xoaying | rtt96gjmki@126.com |
| 160 | XZZjjl | xdcuiijh@126.com |
| 161 | Yanxing | meo2sk455@outlook.com |
| 162 | yindalun | yyddlldegs@163.com |

| 163 | yinliting | yinliting007@163.com |
| 164 | YMBeeio | njhyvh@126.com |
| 167 | YQYeian | yqyujo@126.com |
| 168 | yushu Co.Ltd | hyx321252@126.com |
| 169 | ZGBH | uihanldfjpp@163.com |
| 170 | Zhanghjijeq | junyujun3@163.com |
| 172 | Zhiaoai | uyhvbua15@sohu.com |
| 173 | ZMhangE | rtgjhc@126.com |
| 174 | ZXCouiao | zxkhjdi@163.com |